IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID ALAN COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-CV-236-JHP-PJC |
| | ) | |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER and OPINION**

Before the Court are Defendant American Airlines, Inc.'s Motion for Summary Judgment, Plaintiff David Alan Cooper's Response in opposition, and Defendant's Reply thereto, and Plaintiff's Motion for Summary Judgment and Defendant's Response in opposition thereto. In the interests of accuracy and efficiency, the Court treats these Motions as cross-motions for summary judgment. For reasons stated herein, Defendant's Motion is GRANTED in its entirety, and Plaintiff's Motion is DENIED in its entirety.

**Background**

Plaintiff David Alan Cooper is a black man[1] who has worked for Defendant American Airlines, Inc. since March 1986. At all times relevant to the instant matter, Plaintiff worked as a mechanic on Dock 4A at Defendant's Maintenance and Engineering Base in Tulsa, Oklahoma. The Transport Workers Union of America, AFL-CIO, Local 514 (TWU) represents mechanics in labor relations with Defendant at that site. Plaintiff, however, actively supports the rival union, the Aircraft Mechanics Fraternal Association

---

[1]Mr. Cooper identifies himself as a Black American, not of African descent.

1

(AMFA).

During the fall of 2003, AMFA attempted to raise sufficient support among the mechanics at the base to force an election to determine which union would represent them. On September 9, 2003, Defendant gave Plaintiff permission to distribute AMFA flyers. While Plaintiff was distributing flyers, another American employee, Randy McDonald, who is a white man and was president of TWU at the time, confronted Plaintiff about forcing the election between the unions with angry and possibly racist words,[2] and made offensive physical contact with Plaintiff.[3] During this incident, Robert Jackson, a white man and the former Managing Director of Base Maintenance, told Plaintiff and McDonald to stop their altercation. Base security and the highest ranking management official on the Base, Carmine Romano, also came to the scene. Romano also told Plaintiff and McDonald to stop their altercation. Jackson attempted to separate them, during which time McDonald swung at Jackson and hit him.

Following the incident, Plaintiff reported to his dock for work. Later that day, he reported the incident to Jack Wing, the senior human resources investigator on the Base at that time. At Wing's instruction, Plaintiff prepared a written statement. Wing also conducted an investigation of the incident.

McDonald was given a "first-step advisory" for his conduct on September 9, 2003. Plaintiff was not disciplined in any way. He continued to work on Dock 4A without any interruptions in his job assignments or responsibilities, and without any

---

[2]Plaintiff alleges that McDonald made "African gibberish" noises.

[3]Plaintiff primarily describes said contact as "humping" his leg.

2

further harassment from McDonald.

Plaintiff complains that Defendant's investigation into the incident on September 9, 2003 was insufficient, and that McDonald's punishment would have been more severe had Plaintiff been white. Plaintiff alleges that he was the only black person distributing AFMA literature at the time of McDonald's attack, and that he was the only AFMA supporter to encounter any harassment, and that part of said harassment was racially charged. Plaintiff further alleges that Defendant denied him his equal rights to support and contract for the union representation of his choice by allowing this incident to happen and by failing to address it adequately. These are the issues currently before the Court.

## **Discussion**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is also appropriate when the party who bears the burden of proof at trial fails to make a sufficient showing to establish the existence of each and every essential element of its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Moreover, in the context of a case brought under federal employment laws, the trial court must also "make a judgment as to whether the evidence . . . could persuade a reasonable jury that the employer had discriminated against the plaintiff." Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 798 (10th Cir. 1993). In this regard, the burden-shifting analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Plaintiff's Title VII and § 1981 claims. *See*

Thomas v. Denny's Inc., 111 F.3d 1506, 1509 (10th Cir. 1997).

In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999). The presence of a genuine issue of material fact defeats the motion. An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249.

**I.     Plaintiff's "disparate treatment" claim.**

To demonstrate a *prima facie* case of disparate treatment, a plaintiff must show that (1) he is a member of a protected group; (2) he suffered an adverse employment action; and (3) similarly situated employees were treated differently. Trujillo v. Univ. of Colo. Health Sci. Ctr., 157 F.3d 1211, 1215 (10th Cir. 1998). Failure to establish any one element defeats the claims. *See* Celotex Corp., 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

The undisputed facts of this case show that Plaintiff did not suffer any adverse employment action stemming from the incident giving rise to this lawsuit. Indeed, the undisputed facts in the case show that Defendant has never disciplined Plaintiff in any way, for any reason. Although Plaintiff alleges that he was discriminated against on the basis of his race and/or union preference because Defendant failed to investigate the incident and punish McDonald properly, he does not allege a legally cognizable adverse

employment action as required to establish a *prima facie* case.

To be adverse, an employer's action must constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefit." Sanchez v. Denver Pub. Sch., 164 F.3d 527, 533 (10th Cir. 1998). Here, Plaintiff's job status was not affected in any way. Plaintiff's dissatisfaction with the way in which Defendant handled the incident simply does not rise to the level of an adverse employment action. *See, e.g.*, Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 26 (D. D.C. 2003) (holding that "plaintiff's claims relating to the denial of . . . her requests to have a support staff member disciplines do not rise to the level of adverse employment actions"); Colter v. Dobski & Assoc., 35 F. Supp. 2d 824, 830 (D. Kan. 1999) (finding that causing frustration, hurt feelings, or humiliation, without alteration to the employee's status, is not adverse employment action); Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996) (noting that "not everything that makes an employee unhappy is an actionable adverse action"). In short, the employer's conduct must have some impact on the plaintiff's employment status in order to be considered an adverse employment action. Sanchez, 164 F.3d at 533. Plaintiff here did not suffer any adverse employment action. Indeed, the actions taken on Plaintiff's behalf to address the incident and punish McDonald were apparently far from inadequate, as Plaintiff alleges, because Plaintiff was not confronted by McDonald again. In light of these facts, Plaintiff's claim borders on frivolous.

### II.     Plaintiff's "hostile work environment" claim.

Plaintiff complains that he was the only black AMFA organizer, and that he was the only organizer McDonald harassed. Plaintiff further asserts that as part of his attack, McDonald made "African gibberish" noises, and other onlookers made "monkey motions" and otherwise degraded black people. He also asserts that Carmine Romano "approved" of McDonald's actions, although he offers no evidence to support this allegation. Plaintiff admits, however, that McDonald did not use specific racial slurs toward him, and that the incident on September 9, 2003 was the only time he has been harassed in this manner. In sum, Plaintiff was not subject to a "hostile work environment."

In order to establish a hostile work environment, a plaintiff must prove that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on or motivated by race; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Hollins v. Delta Airlines, 238 F.3d 1255, 1258 (10th Cir. 2001). Here, Plaintiff was undoubtedly subjected to unwelcome harassment. However, Plaintiff's allegations that such harassment was racially motivated are thin at best, especially when considered in conjunction with the underlying union dispute. Moreover, the undisputed facts show that Defendant promptly intervened in the incident between Plaintiff and McDonald, and that McDonald never confronted the Plaintiff again. Defendant did not discipline Plaintiff in any way as a result of this incident, and Plaintiff's employment status was completely unaffected.

Upon review of these facts, it is clear that Plaintiff has failed to "bear[] the burden of establishing that the employer's conduct was unreasonable." Id. He has not demonstrated that Defendant was negligent because "it knew or should have known about the conduct and failed to stop it." Id. (*citing* Burlington Indus. v. Ellerth, 524 U.S. 742, 759 (1988)). He did not show that he was subject to a "steady barrage of opprobrious racial comment" as would offend Title VII. *See* Johnson v. Bunny Bread Co., 646 F.2d 1250, 1257 (8th Cir. 1981) (holding that sporadic use of racial slurs is insufficient to trigger Title VII protections). He has not shown that McDonald's actions "unreasonably interfer[ed] with his work or performance nor adversely affected his employment opportunities." Daemi v. Church's Fried Chicken, 931 F.2d 1379, 1384 (10th Cir. 1991). In short, Plaintiff has wholly failed to establish a *prima facie* case of discrimination.

### III.     Plaintiff's union affiliation.

Plaintiff also asserts that employees have a contractual right "to organize and bargain collectively through a representative of their choosing" pursuant to 45 U.S.C. § 152(4), and that such right is protected from discriminatory acts under 42 U.S.C. § 1981. Plaintiff's argument that the McDonald incident and Defendant's subsequent investigation of and discipline against McDonald "were in opposition to and in an effort to undermine the organizing efforts of those that sought to be represented by" AMFA is nothing short of confusing, especially in light of Plaintiff's admission that he does not know of a single mechanic who did not sign a card to force an election between AFMA and TWU because of the incident between Plaintiff and McDonald. Furthermore, this claims suffers the same factual and legal infirmities as his other claims.

First, the Court notes that union affiliation is not a protected class under § 1981. *See* St. Francis Coll. v. Al-Khazanji, 481 U.S. 604, 613 (1987) (explaining that § 1981 was enacted to prevent discrimination against an individual on the basis of his or her race or ethnic background). Any attempt to undermine the efforts "of those who sought to be represented by" AFMA is race neutral, insofar as the class is not defined by race - even though Plaintiff happens to be black - but rather by union preference or affiliation.

Second, the Court notes once again that Plaintiff did not suffer an adverse employment action as a result of his union activities. In fact, Defendant gave Plaintiff permission to distribute AFMA flyers. Defendant also acted to stop McDonald's harassment of Plaintiff while Plaintiff was engaged in this activity. Plaintiff admits that he was not disciplined in any way as a result of the McDonald incident.

## Conclusion

Plaintiff here has wholly failed to establish a *prima facie* case of discrimination. Accordingly, Defendant's Motion for Summary Judgment is GRANTED in its entirety, and Plaintiff's Motion for Summary Judgment is DENIED in its entirety, and this case is hereby terminated.

James H. Payne
United States District Judge
Northern District of Oklahoma